May it please the Court. My name is Paula Harms and I represent Mr. Ramirez. With the Court's indulgence, I would like to address two claims in particular today. First, the Martinez IAC sentencing counsel claim, and then the Atkins claim. In regard to the Martinez claim, it's very important to remember that respondents have admitted that post-conviction counsel performed efficiently. Therefore, the only question left before this Court is whether the underlying IAC claim has some merit. Now, some merit is meant to be a very low bar, but yet the District Court denied any factual development in an opinion that has serious flaws on both the deficient performance and the prejudice problem. This has always been very confusing to me. I mean, your going-in notion is that it has to have some merit, but there's still a prejudice prong on the post-conviction counsel's IAC, and that essentially encompasses a Strickland-like standard wrapping in the trial counsel IAC, doesn't it? Yes. So it's not really a COA-like standard? I think in a sense, when the question is whether should it go forward to factual development, then it should be a lower bar. When you're judging the actual merits of the claim with a fully developed factual record, then it would be de novo review under Strickland, but I think when the question is... Not de novo review. I'm talking about the... There are two IACs here, right? Right. Now, I understand that they have essentially acceded to the PCR representation prong, but there's still a prejudice prong. Correct. Right? That doesn't... That's not the merits of the, or is it, of the ineffective assistance of trial counsel, but it wraps in the merits to some degree. I think this is a question we're all struggling with in the wake of Martinez. Oh, yes. And that's why it wasn't very helpful to get up and say it's so easy because it's not easy. I think for me the distinction is when you're looking at does the claim have some merit and not that it should go forward to factual development and a hearing. Now, after a hearing, then the question would be under de novo Strickland review, can you prove both prongs? If the question... Of what? Both prongs of what? Strickland. Of which IAC claim? Well, since they've conceded deficient performance for PCR counsel, I think the only question left at a hearing would be the underlying claim. Because, in essence, if you prove the underlying claim, you've proven prejudice from post-conviction counsel's performance. Which gets me to, I think, a somewhat similar concern. I look at the district court's decision, and I'll apologize to both of you now for my voice. The weather doesn't help. The district court was aware of the some merit standard. The order recites it. And the conclusion of the district court's order says the default is not excused under Martinez, but everything in between appears to be de novo review. He doesn't apply the some merit standard and recites at one point that both sides for different reasons urge the court to reach the merits. So do we read his order as being an ultimate decision on the merits, albeit without an evidentiary hearing? Or should we simply take it as being something that speaks only to the procedural bar? I mean, what I see happening is if we decide, oh, some merit is a lower standard, so send it back, we're going to get exactly the same order right back from the district court because the district court thinks it decided on the merits. I think the problem is it decided it on the merits without the opportunity for factual development. And that's where the real problem in its analysis lies. There was enough merit to this claim that it should have been allowed to go forward. What would the factual development be? I mean, what is it that could be added to the record at this point that we could look at? Well, trial counsel has not testified in any proceeding. She signed a declaration which indicates that she admits deficient performance. She admits that she would have allowed all this evidence in. It would be up to the state, I guess, whether or not they felt they needed the opportunity for factual development or whether we can decide this case on the factual record as it stands because it is true that many of the facts supporting prejudice have already been heard at the Atkins hearing. It would be more a question of the deficient performance prong and whether the state feels they need to have a hearing on that or we can decide that on the record. Now, the district court found that there were no material facts pending about defense counsel's performance. And in finding that, it essentially ignored defense counsel's own declaration and her investigator's declaration, which stated that their knowledge and their investigation of the mitigation available was very limited and that they would have done more and they should have done more. It wasn't comparatively limited to other cases we've seen. I mean, the real question is whether it was deficient in some independently critical way, even though she wasn't sitting at our hands. Right. The Supreme Court has clearly stated in cases like Sears and Williams v. Taylor that you don't end the inquiry just because counsel did present some limited mitigating evidence. The fact is his life history is so rich with mitigation, she was able to superficially present a few facts. But as Sears talks about, you have to compare what could have been presented with what was presented. Was it substantially incomplete? I don't think it's fair to say that leaving out brain damage and intellectually disability and myriad facts in his background about this traumatic childhood, that that's not a substantially incomplete mitigation when you compare what was known and what we now know. It's simply two different worlds. The district court found, for instance, that the new evidence of brain damage would have little prejudicial effect given the state court's finding that he wasn't intellectually disabled. To me that makes little sense because brain damage has independent significance in and of itself. In both Sears and Porter, the defendants were brain damaged. They did not have intellectual disability, but the brain damage was something the Supreme Court said had a prejudicial effect. In Arizona, in the pre-Martinez opinion, the district court itself acknowledged that at the time in Arizona, someone with a low IQ and with brain damage would have significant effect on mitigation because it could be connected to the crime. We know how important that was in Arizona at the time. If you look at cases like State v. Roque, his IQ was 80. It wasn't intellectually disabled. But the Supreme Court reduced his sentence to life on independent review because they said that IQ of 80 likely had an impact on his behavior. And that's precisely what the expert report on brain damage says in this case. It's at ER 753. It talks about the areas in Mr. Ramirez's brain that are damaged directly affect his ability to function in life. They manifest itself in poor judgment and in pulse control and the inability to plan and organize his behavior. And evidence of mental impairments, especially brain damage, is a sort of mitigation that inspires sympathy because it diminishes moral culpability for the crime. It was well established at the time, since the early 1980s, that counsel had a duty to investigate organic brain damage. If you look at the Porter case, that case was tried in 1988. Ramirez was tried in 1989. And the court faulted counsel in that case for not investigating brain damage. In Sears' case, it was also tried fairly early on, and brain damage was also needed to be investigated. What's important to recognize here, the key to our claim is that when you have a mental health expert, you have a duty to provide them with background information. You cannot expect an accurate mental health evaluation unless you provide them with the information that they need. Now, Dr. McMahon has specifically stated, had he seen those childhood IQ scores on the WISC in 1967 and 1969, that he would not have given the PBBT and he would have never ruled out mental retardation. He would have given him a more comprehensive IQ test and he would have looked into adaptive behavior. So even given the limited information that child counsel had, that school record showing those IQ scores, she did not give it to the expert, which led to mislead everyone for years that Mr. Ramirez was not intellectually disabled. But the judge at least could have seen it. I mean, she didn't highlight it, but it was in the record. There was no diagnosis of intellectual disability in the record. But the earlier IQ tests were in the record. Yes, but it contrasted greatly with Dr. McMahon's report saying this PBBT IQ of 94, which was vastly overstated and was not a diagnostic test we know now, and was also actually an outdated version of the test, the later version that he should have been given at the time, did not report to return an IQ score because it shouldn't be used that way. In terms of the intellectual disability finding of the state court on the Martinez claim, this court is not bound by that. In fact, the factual finding is quite different. The question is quite different. But it also doesn't matter, does it, for the reasons you just said. In other words, a technical Atkins intellectual disability determination and the mitigation of having a being at least not a well below average intellectual ability are not the same thing. Correct. And the facts actually that the state court judge found, if required to take the Flynn effect into account, Ramirez had proven all three prongs by her partner. I'm saying, as you said before, are we now switching our issues or are we still on the intellectual assistance? I'm happy to go wherever you want to. Well, I want to know what you're arguing. Well, I was trying to argue that you're not bound on the Martinez question. Right. And the reason you're not bound is because the standards aren't the same. Correct. I don't know whether I would agree you're not bound because you could do it all over again anyway, but in any event, the standards aren't the same. Yes. The question basically under if you just were looking at intellectual disability, not all the other mitigation, was did Ramirez present enough credible information on intellectual disability that a reasonable fact finder could find that he was intellectually disabled? It doesn't matter. But they wouldn't even have to find that he was intellectually disabled for it to be a mitigating factor. Correct. Right. So it's not the same substantive standard. No, not at all. In regard to the deficient performance problem, I think I alluded to this earlier, that the court basically ignored counsel's own statements, the investigator's statements. He said that although she had those school records that she didn't give to Dr. McMahon, it was okay for her to rely on his conclusion that the client was not intellectually disabled. He ignored her statement that she had no strategic reason for not presenting all this information. In Dr. McMahon's report, he listed all the documents he received from counsel and includes absolutely no social history documents other than prior criminal records. And the entirety of the additional background information he got came from Ramirez himself, which he actually commented at the time was not a good situation, and he wished that his background information would have been more complete. I would like to go ahead and move on to the Atkins claim, and this court has asked me to address the recent Shute v. Hill opinion. So the Sixth Circuit clearly erred in relying under D-1 so heavily on Moore because it wasn't clearly established at the time the state court was looking at the ID claim, which was in 2004. What they didn't say was whether or not he could still get relief under D-2, and that's a question that's still open on remand, and we know the answer to that question because of Broomfield v. Cain. Broomfield was an advocate, decided under the D-2 prong, and the Supreme Court found D-2 was met because they pointed out how the state court findings were so clearly at odds with the science of intellectual disability on both the IQ prong and the adaptive behavior prong. So are you conceding that the D-1 is off the table? I think I would have to concede that we would need to prevail under D-2, but I think it's especially appropriate in this case because of Arizona statute, which is actually good in one respect. It talks about the necessity of following current clinical standards. The lower court acknowledged that it must follow current clinical standards. It was provided with the user's guide from the AAMR, the diagnostic manual. All the experts acknowledged it. The trial court acknowledged I must follow this in finding current clinical practice. It then chose simply to ignore clinical practice, and that's why it's so unreasonable. You're arguing D-2 or D-1? D-2. You know, from age 9 to 48, Mr. Ramirez has been given five valid tests of intelligence. Each of these scores qualifies him for the diagnosis of intellectual disability. Are you going to at some point discuss the timing problem with regard to the Adkins claim? Sure, I'd be happy to. We believe that we meet the statute of limitations under 2241 D-1B, which says that the statute begins to run on the day in which the factual predicate of the claim could have been discovered with due diligence. Now, Mr. Ramirez was evaluated shortly before Adkins on June 18, 2002. It was then shortly after that he became refused legal visits. Because of his cognitive deficiencies, he could not grasp the fact that we needed to have more mental health evaluations. He was hostile to having more mental health evaluations. If you look in the Adkins case, he told every single psychologist who saw him, I'm not mental. It was important for him not to be seen as intellectually disabled. It took time and trust to be able to get him to agree to another evaluation. That evaluation happened in July 2004. As soon as he came back with a score within the range, we immediately began. That's sort of a meld of an equitable tolling argument and we meet the standard argument, right? Because ordinarily you would say, if he doesn't want to meet with his lawyer, that's his problem. So you have to have another piece of this. Well, yeah, diligence is involved in both the D-1D analysis and the equitable tolling analysis. So it's relevant for both purposes. You know, these claims are not like a Roper v. Simmons claim, where you would immediately know on the day the Supreme Court issued its opinion whether or not your client qualified for relief. Atkins, it's not that easy, and especially here when you have a client that's refusing legal visits, that's not amenable to another mental health evaluation for quite a while, and you have the trial expert purporting to, or not purporting to, he ruled out intellectual disability. Now we know that that was faulty, but at the time, in the early days following Atkins, we did not know that. In support of your Martinez claim, you point to a number of things which should have alerted trial counsel, all of which was still there and known years later. Right. So when I hear your argument, I guess I'm more interested, I'm less interested in the within one year part and more interested in equitable tolling or even relation back, because I've got to say, it seems like a hard sell to say that there wasn't enough to be on alert within one year, to do something well before something was actually filed. Well, in terms of equitable tolling, I think I cite two cases on this point which are directly on point. In Ray Campbell and in Ray Cathy. In both of those cases, there was an IQ score of 84 and 1 and an IQ score of 77. The IQ score we were dealing with here was an IQ of 94, and someone who had definitively ruled out mental retardation. By that time, you also knew it was 70 and 77. Correct. Those weren't unknown to counsel then, and you were trying to do something about it. Yes, we were. And it also must be remembered, you can't say someone is intellectually disabled based on IQ alone. You have to have the adaptive behavior portion also. But in those two cases, they said, you know, it was not facially unreasonable to rely on these prior IQ scores to think that they didn't have a viable Atkins claim. We did not just rest on our laurels, but it was Mr. Ramirez's cognitive deficiencies that were preventing him from understanding why he needed to have more mental health evaluations. Those legal visit refusals came right on the heels of his first visit with Dr. Weinstein. But wasn't there, so what's the actual timeline? At what point did he actually then agree to having the, what's the time frame between when he agreed to start having these visits and when it was filed? I can't tell you that precisely. But it was a fair amount, a year, a year and a half? Yes. You know, it makes me a little uncomfortable discussing these facts because obviously there's some attorney-client privilege involved here. But if you look at Mara Siegel's declaration, she had the same problems that we were having, getting him to understand the peril he was in. And just, you know, because of his cognitive deficiencies, he wasn't understanding the importance of what mitigation meant and why mental health evaluations were so important. You know, about 30 to 40 percent of the intellectually disabled go undiagnosed. So the court should be disabused of any notion that as a lawyer, I would, meeting with him, know whether or not he was intellectually disabled. There's something called the cloak of competence, which even respondents expert admitted was involved in this case. It was very important for him not to be labeled intellectually disabled. And that's counterintuitive for us, knowing that it means he would be relieved of his defense. It's more important for him not to be seen as intellectually disabled. I have a sort of out-of-the-box question, somewhat related to dissent by Judge Wiener, I guess, in the Fifth Circuit. Why, I mean, an Atkins claim is a claim about whether he can be executed. It's not really a claim about whether, exactly, about whether the death penalty can be imposed. Okay? So I'm just wondering about exactly how the time period even applies to this. In terms... In other words, and the answer may be that because, because, for example, when you have a mental health, if somebody is claiming that they have an insanity reason for not being executed, that, I assume, doesn't arise until it's time to execute. I mean, because it can change. The difference may be that this theoretically doesn't change. But it's still a claim about whether he can be executed because of his condition, not really whether he can be sentenced to death as such. I see what you're saying. And that is an interesting look at it. I hadn't thought of it that way. But it makes sense. But there is this very interesting dissent by a judge in the, I guess, Fifth Circuit, who sort of points this out, that this is really not, that the Atkins claim is really a different kind of claim. And it's not clear that the one-year statute really applies to it. So it could be extended until the State is actually seeking to take his life. And, therefore, it would become ripe only then whether or not he was intellectually disabled. And I think a lot of courts, you know, they've allowed Atkins claims to be filed 10 years, 15 years, because I think everyone recognizes when someone has an intellectual disability that's ineligible for the death penalty, procedural rules need to be relaxed. And, in fact, the federal courts have a policy of this in civil cases. In the Lakeview-Arnold case I cited, the procedural rules and statute of limitations should be relaxed when we're talking about the intellectually disabled. In the case of Simon v. Uribe, this court remanded for a determination on equitable tolling about intellectual disability. And the court ended up tolling five and a half years because of intellectual disability. And, obviously, that was at play in this case. We could not get him to understand why he needed to have another mental health evaluation. And we had problems communicating with him because of that. But these are a set of assertions by you now. It would presumably have to be the subject of an evidentiary hearing, which would come up if you had an equitable tolling argument. It wouldn't come up if you had the one-year argument or if you had a relation back argument. That's right. We've made several alternative arguments. But the only one that would be subject to an evidentiary hearing would be the equitable tolling argument. Yes. I believe that's true because the court can make a decision on relation back on the record. And I think it's important to remember that Mayall v. Felix did not address the unique situation that Atkins claims present. It makes sense to have a stricter relation back analysis for legal claims and facts that have always been there since trial. But Atkins simply doesn't present that situation. He could not have raised this in his initial petition, even if he had the facts. It would have been found noncognizable under Penry. So Mayall v. Felix doesn't address the unique situation that Atkins is. And it's more in the nature of a supplemental claim, something that happens after the initial amended complaint is filed. Well, I hear what you're saying, but also the component that says onset before age 18 doesn't suggest that Atkins addresses the deteriorating condition. I've never sat on, but I've seen or read about the kind of post-death warrant claims. What is the person's condition now? And Atkins is before that. So I'm not sure how much change there really is that has to be taken into account. If part of the requirement is that it's before age 18. Right. It's a developmental disability that's lifelong. So he would have those problems throughout his life. So if you've proved intellectual disability, it would be a matter of proving how it affected his ability to work with his attorneys. But that can't be relevant to the Felix v. Mayall question. It could be relevant maybe to the one year and certainly to the equitable tolling. Yes, that's true. In terms of relations back, he has an eight claim about the failure to have a mental health expert involved. Claim eight, which the court found unexhausted, wasn't truly completely exhausted because it has always been alleged since day one in state PCR that sentencing counsel was ineffective in regard to mitigation. So it would relate back to that claim. That portion of the claim was exhausted. Well, what are the prior claims based on the fact that petitioner was intellectually disabled? That's certainly something that relates to your IAC claim, but it's also not really the focus of the IAC claim. What claim does speak directly to the same facts that you're trying to raise for intellectual disability? Well, we were allowed to amend in the Martinez claim, which alleges that counsel was ineffective for failing to investigate and show that her client was intellectually disabled. The court allowed us to amend to add that claim, which was premised on relating back to claim eight. So it's always been alleged that there was either lack of funding or lack of counsel on mental impairments. The Atkins claim merely gives that a label, and I would like to reserve the remainder of my time for rebuttal. Certainly. Mr. Todd? Good afternoon. May it please the court. I'm John Todd. I represent the warden in this proceeding. I'd like to first continue the conversation with the Atkins claim. Back in 2001, the district court authorized the Federal Public Defender's Office to review the state court record. That was long before the Atkins case, long before the Atkins case was argued. The document that has all the work that trial counsel had done on sentencing was available to them since 2001. Well, yeah, but the trigger date is the date that Atkins was decided, right? Right. But the point is, Your Honor, that the document that gives the childhood IQ scores, the document that has all his school records, were available to — Okay, but so what if he had no obligation and no reason to file this claim until Atkins was decided? So let's start there. Well, his expert, his mental retardation expert who visited Ramirez after the Atkins case was argued, prior to the decision, had the opportunity to see all this information. Okay. And so what? So what? Yes. Did lawyers have no obligation to file anything until Atkins was decided? So let's start there. Okay, Atkins was decided in 2002, June of 2002, right after his expert, his mental retardation expert, saw him and interviewed him. If I'm understanding your argument correctly, you're conceding that the statute doesn't start running until 2002 when Atkins was decided. Your argument is that at that point there was already sufficient information in the record to put counsel on notice. Yes, Your Honor. Okay. I just thought you were talking past each other about it. Yes. You're not contending that counsel had an obligation that started running in 2001. Your argument is it started with Atkins. Right, Your Honor. Okay. Absolutely. So what do you do about the, I'll call it equitable tolling argument, based on Petitioner's personal refusal to meet with counsel or to accept the proposition that he had mental deficiencies? Well, I would argue that's not an extraordinary circumstance that prevented the filing. Moreover, he began to see counsel in July of 2003, and about a year elapsed before, I believe, Dr. Weinstein went back and tested. So there's no diligence here. Supposing that they had, you say they had the information in the file as of the time Atkins was decided. They had some information. But they certainly couldn't have made a viable Atkins claim at that point, right? Because they did have to do all this testing. They could have done the testing in 2003 if they were diligent. Well, I know, but I'm asking a somewhat conceptual question. At what point, given the complexity of showing an Atkins claim, at what point in the knowledge, I mean, suppose they had been very diligent. Let's assume that for present purposes that maybe they could take out the period on equitable tolling grounds that the client wouldn't deal with him because of his intellectual disability. Let's just assume that. So from the time, because you seem to be assuming that. So from the time that he did accede to testing, right, should they have filed it then, even though they didn't have the testing and couldn't have proven anything? Or what? Should they have done the testing faster, or what? If the testing showed at least one prong of intellectual disability, what would prevent them from filing at that point? That they would lose. They didn't have a viable claim yet. Right? No, they had an arguable claim. An arguable claim, but they had a losing claim because they couldn't demonstrate the facts they had to show. What would happen under Atkins is the case would be remanded to the state court, where they would have an opportunity to develop, as they did, their additional second prong to the case. The second prong to the Atkins inquiry. What's not remanded? You mean they could have filed with the state? They could have stayed the habeas proceeding and gone back to the... And you wouldn't have come in and said, well, they don't have any kind of viable Atkins claim. Where's the adaptive behavior test? They would have stayed, which they did. They would have stayed the case and gone back and developed it. Moreover, they had the opportunity to interview people during this year's period prior. The district court didn't abuse its discretion in denying those three Atkins-related issues. The equitable tolling doesn't apply. Relate back doesn't apply. Claim 8 was procedurally defaulted long before. Claim 34 is procedurally defaulted, remains procedurally defaulted. In claim 8, the 8 claim is factually different in time and type from an Atkins claim. Because? Because the facts that support an Atkins claim is that prior to age 18, that he had, that the defendant had substantial intellectual capabilities and had significant deficits in adaptive behavior. Those facts have nothing to do with the 8 claim based on the failure of the trial court to authorize additional or to authorize funding. So they are... Well, it doesn't have to do with funding, but they may well have to do with the trial counsel IAC claim. I didn't follow your order. They may well have to do with the trial counsel IAC claim. It seems to me that the relationship between a substantive claim and an IAC claim, for males' purposes, is somewhat of a one-way ratchet. That is, if you have a substantive claim, that doesn't... It has an overlap of the facts if you're trying to later allege an IAC claim, but there are more facts in the IAC claim. But in the other direction, which... And this seems to be the other direction. That is, they're saying, well, they had an IAC claim that included the intellectual disability issue. Well, you would have to prove up the intellectual disability facts. So in that instance, the facts... There are more facts in the IAC claim, but the intellectual disability facts are there. I respectfully disagree, and I think Schneider would disagree also. I think Schneider was running the other way, but... Well... Okay. In any event, going back to Issue 1, or going to Issue 1, that issue, the district court properly found it still procedurally defaulted after doing the Martinez review. And the court had the necessary records to do the Martinez review. Let me put to you a question similar to the one I put to Petitioner's Counsel. As I look at the district court's order, it recognizes the standard as being some merit, similar to the Certificate of Appealability standard. Correct. And the conclusion of the order speaks in terms of procedural default. Correct. I see no mention in between of anything that applied the lower Certificate of Appealability standard. And I have to say, if that's the standard that applies, I've got some difficulty that some fair-minded jurists might find some traction, or that no fair-minded jurists might not find traction. It seems to me the district court spoke of it much more in de novo terms as to ultimately concluding there's not merit to the argument. But that's not really the standard that applies under Martinez, is it? I believe what the court did was it looked at the record and found applying strictly de novo found there was no merit to the claim. End of story. So that means that he didn't decide in Martinez's question, he decided the merits of the trial counsel claim. He decided that under Martinez there was no merit to the claim. It was without merit. So even if I assume that, because I know your time is limited, I'm going to push you down the road a little bit. If we assume that's what happened, and I can understand that, although the conclusion doesn't speak in those terms, don't we have a problem with regard to no opportunity to at least request or explain why an evidentiary hearing is appropriate? Because there was no evidentiary hearing to speak to those issues. That is correct. There was no evidentiary hearing. But the record was fully developed. Because what you're looking, I mean, because of the Atkins proceeding, they had an additional record. But the focus is on primarily what the counsel did. Was it reasonable under the circumstances? And the district court pointed out that what counsel did, given the circumstances, given the fact that the defendant was uncooperative, given the fact that the defendant had told his family members not to cooperate, given the fact that she had to subpoena the family members that testified to the sentencing hearing, that she had gotten all these records that were available, the new evidence has been presented. Some of it was stuff that Martinez, Ramirez would have known and didn't share. Some of it, most of it is simply information from family members who he had encouraged not to cooperate. The evidence, the additional mitigation was miniscule compared to what she had presented. In fact, she had been able to get the trial court to fine G1, which is the strongest statutory mitigator in Arizona, finding that Ramirez was somewhat impaired, was significantly impaired at the time of this grisly double homicide. So all this additional mitigation, which is in the record and proffered by declarations, doesn't overcome the aggravation in this case. No reasonable censor would find that it did, given the double homicide, which is heavily weighted in Arizona, the F6 cruel and heinous types of the murders, and his prior dangerous felonies, violent felonies. Your opposing counsel suggested that the state might have wanted to pursue a theory at an evidentiary hearing concerning the actions of counsel. And if I'm understanding your argument here, you're basically saying the state was content with the state of the record? Yes. In fact, I believe both parties had urged the district court to simply decide the issue. Well, is that right? I mean, you're essentially... He did do that, and I was a little confused by the explanation as to why he did it. But are you essentially saying that there was a waiver on both sides of any evidentiary hearing? I won't speak for the Federal Public Defender's Office. But, yes, we felt the record... And did you ask them to decide the merits? Yes. That's my recollection. So, really, I mean, I suggest we shouldn't be spending a lot of time worrying about all these different levels of, you know, reasonable jurists and probabilities or anything else. We should just worry about the merits. It's not the merits of the Martinez. There is no Martinez claim. A Martinez is a basis for waiving procedural default. If you're reaching the merits of the trial counsel IATC claim, then we don't have to worry anymore about a procedural default. We just have to worry about that. I respectfully disagree. I'm sorry, why? Because what the Court found was that Martinez did not release, did not surmount the procedural default of Claim 34. But he did it, as you're describing it, with your agreement, by deciding the merits of the trial IATC claim, which is the only thing that's being asserted was procedurally defaulted. So for deciding the merits of it, why are we worrying about a procedural default? I believe the Court explicitly said the claim remains procedurally defaulted. Well, yes, but it's procedurally defaulted because it doesn't exist. I mean, it doesn't — I don't understand how, if you get to the merits of the claim, we're still going to put another layer on top of it. Here's the problem. In his order, he specifically recites on page 5 of that order, page 7 of the record, what the standard, the Martinez standard is. It's some merit, and does not apply that standard thereafter. And so we can reach the merits. The standard for Petitioner is much tougher there. The standard for some merit is much easier. And so — but he doesn't offer a conclusion based on a sub-merit standard. So if we're going to go to the merits and the tougher standard for Petitioner, I don't think we can cling to procedural default as still a reason for not taking the case up. If you think we should take it up under procedural default, then it's your task to defend his conclusion based on a sub-merit standard that his order never speaks to. Well, I guess the way that I'm looking at it is that by saying there's no merit, it subsumes the some merit standard. Well, I can't quite because it's not so much lower standard. Petitioner can clear that without clearing the ultimate merits issue. Right. But we do want to have some common sense. If the — It sounds to me like you want us to go straight to the bottom line. Treat this as a merits appeal. Right. But doing that, that doesn't — only for the purposes of establishing that the claim is procedurally defaulted. We can't do that because it's a different standard. I mean, I hear your problem. I look at the district court order and I see the same problem because if we're applying a merits ultimate, a no vote review kind of standard, that's very different from the standard we would apply under Martinez procedural default. Yes. It is true there is a difference, obviously. It is true that it's easier for the defendant to — or the habeas petitioner to meet the Martinez standard. But the issue, the underlying issue is whether or not that claim is procedurally defaulted. Well, yes. Well, anyway. Let me ask the question a different way. Let's assume that we concluded that the district court erred in concluding that there was a procedural default because there was some evidence, some evidence standard, some merit standard satisfied. Where does that leave us with this appeal? Do we then say, well, he reached the merits so we're going to — it's not procedurally defaulted and therefore we should get to the merits? Or do we remand and say let's have a duel? You certainly don't remand. This generation has passed since this case entered the federal review process. So you definitely do not remand. You look at what the court did and decide whether or not it meets — Well, do we look at what they did or what they should have done? If what he should have done is a some merit standard, I understand your subsumed argument is correct in the sense that — but it does lead to washing out the procedural default layer. In other words, yes, if there's no merit, then there's — then they're ultimately going to lose. But that isn't — but you can't do that by saying, well, he only decided procedural default. So if we're really only going to decide procedural default, then we're going to apply a different standard than the one he applied. Wouldn't — I mean, courts can be efficient. If they're — we can be efficient, but we can't be efficient and cling to the language of procedural default because that's a different standard. I agree with you if what you're saying is we can get to the merits and resolve the case based on the merits. We would have an issue there with regard to evidentiary development and whether a petitioner had a right to an evidentiary hearing. But we're not stymied by procedural default. At least my problem, and I think my colleagues' problem, is that you don't want to let go of the procedural default issue. And we can't say affirm with regard to procedural default because he's going to lose on the merits. The standards are too different. So if what you want is affirmed, I think what you want us to do is take up the merits. What I do want is affirmed. I guessed that somehow. Just a hunch. And however this court gets there, it's certainly your business. Looking at it, I think through common sense, I think you could find that a claim is procedural defaulted. But, you know, however you like to proceed. They taught me in law school if the judge says you win, you get out of the courtroom, right? Right. So you're willing to get out of the courtroom. Right. The only other thing I might mention is that concerning the eight claim, the McWilliams v. Dunn case does substantiate that there was no problem with the Arizona procedure as far as federal law is concerned. Which procedure? The Atkins procedure? No. The procedure with the eight claim in terms of having a psychologist who the court appoints, the defendant appoints. Hang on. Are we talking about Aki or what are we talking about now? Okay. We're talking about issue three. No, excuse me. Issue two. A-K-E. I was hearing eight. A-K-E. I thought you meant eight. I kept hearing you say eight. I'm sorry. I've heard that case name pronounced so many different ways. I would say A-K-E, you say eight. Okay. A-K-E in Hawaii. Do you want to address the merits at all of the Atkins claim? If the court wants me to, sure. Well, why don't you? In other words, we only argued about the question of whether we get to it, but suppose one way or another we got to it. Part of my confusion there is that we have separate claims. We have claim 36 and we have claim 38. I'll put this to petitioner's counsel as well because they were treated by the district court at different times in different ways. 38 seems to be the more overt Atkins claim. It came after the state court's hearing. 36 speaks with the same language in the same neighborhood. It was resolved, and 38 was resolved purely on timeliness grounds. 36 was resolved immediately before the state court Atkins hearing on both timeliness and merits grounds. I take your argument to be, well, what district court decision are you directing us to with regard to the Atkins claim? Okay, and I'm a little bit confused, but we're talking about the last three issues that are uncertified, right? And I'm talking about issue four in the appellate briefs. Okay. That issue four is the substantive Atkins claim. Correct. And what is it that? Well, I'm trying to figure, I mean, I got confused. It took me a long time to figure out what the district court was talking about when. And ultimately I hit, with help from my law clerk, on a formulation that says there are two different claims, habeas claims, claims numbers 36 and 38, that seem to speak to these issues. They were resolved by the district court in two different orders in slightly different ways. So when I look at what we're just calling the Atkins claim, issue four in this court, what is it you're pointing us to in the district court's decision that we should be looking at to resolve the question put to us? The question of whether or not the district court abused its discretion in not allowing that amendment. Correct. And the reason I pose this is that the district court resolved claim 36 on alternative grounds, timeliness and merits. It resolved claim 38, the one that came after the Atkins hearing, solely on timeliness grounds and did not speak to merits. It seems to me the discussion for the two would be the same. So I guess what I'm really trying to find out is whether you think, for practical purposes, the district court relied solely upon the lack of timeliness in presenting the Atkins claim to federal court, or whether the district court was also relying upon a merits analysis. I believe it was timeliness. Okay. Were there other questions concerning the substantive Atkins claim? Yes. He addressed it on timeliness grounds. If we disagree with him, what is your argument? Why is their Atkins claim not meritorious? Because the state court followed Atkins and applied Atkins at the time of the Atkins proceeding. Well, he has various discreet arguments. I mean, one of them is that the state's experts didn't comply with state law. As to their background, they didn't comply with state law. In the way they went about the adaptive behavior investigation, that the actual numbers that came out from all of the testing would have satisfied Atkins, just Atkins itself, in the way that the Supreme Court case, whose name I'm now forgetting, that applied 2254-G2 suggests. I mean, she has a bunch of discreet claims. If you don't want to address them, that's fine. Well, I think if you carefully read the trial court's order, he relied basically on Dr. Tassay, which was their last-minute expert. And he accepted Dr. Tassay's numbers for the first prong. And he accepted Dr. Tassay's lowering the higher score by five points because of the practice effect. He considered the... But he said the scores weren't sufficient. Why? Because they were above, most of them were above the 70%, which had been long held as the upper limit of intellectual disability. In Arizona, you also include a range for standard of error, I believe it is. And he accepted Dr. Tassay's figures as far as that. He considered the adapted... Adaptive behavior. Yes, thank you. Thank you. He considered what their experts found. Both their experts, the court's experts, the state's experts all used, all reviewed the prison records under Arizona law at the time. That was proper. Well, but Brumfeld, for example, said that there was a 2254-G2 problem because the Louisiana courts there said that the 75 test was not sufficient, the number, but accounting for the margin of error, Brumfeld's reported IQ test results of 75 was squarely in the range of potential intellectual disability. And that's just, that's not, as I understand it, relying on Hall or anything else. It's just relying on the facts and evidence. So why isn't this the same thing? Well, one, that's not, Arizona law is not the same as what was discussed in Brumfeld. That's one point. The second point is that case was decided after the hearing. Yeah, but this is an example, but this case is not as applying a factual analysis. Just applying a factual analysis under D2 is insignificant unless it violates the Constitution, somehow enters into the proving up a constitutional violation. The constitutional violation that we're talking about is Atkins, as it was decided in 2002. Okay. That's what they were talking about here, too. Okay. All right. Anything further? Thank you, counsel. Thank you. It's been a pleasure. In regard to the Martinez analysis, opposing counsel characterized the new mitigation as minimal. I don't think it's reasonable to call intellectual disability and brain damage minimal new mitigating evidence. He talked a lot about Ramirez's lack of cooperation. If you look at the Porter case, he was described as fatalistic and uncooperative that does not abstain counsel from having an independent duty to investigate mitigation. In terms of the G1 statutory factors that the trial court found, it was primarily based upon drug and alcohol use. Now, the case law talks about how some fact finders will discount this because they see it as a matter of choice to use drugs and alcohol. Intellectual disability and brain damage are not a matter of choice. They are something that you were born with, and it is inherently more mitigating than drug and alcohol use. Can you walk me through the time periods that you think apply on equitable tolling? Would you agree with your opposing counsel that, as of the date Atkins was decided, that there were sufficient facts in the record that would put counsel on notice of investigation? I think, in terms of diligence, you have to remember it wasn't just a mental health expert returning a higher IQ score of 94. He, in that report, said this score is in no way indicative of any form of mental retardation. It wasn't apparent at the time that he hadn't seen those childhood IQ scores because counsel attached them to her sentencing memorandum. You have a difficult problem to suggest, on the one hand, that the trial lawyer should have gone further because she had the other IQ scores, but the habeas lawyer shouldn't have gone further. That can't be. Well, we were presented with two different scenarios. Well, perhaps. But let's assume, for the sake of argument, that there was sufficient information in the record to put counsel on notice of an Atkins claim at the time Atkins was decided. So what time period are you claiming is tolled? I would say between June 2002, when Atkins was decided, on June 24th, and July, I think, 28th or 29th, when Dr. Weinstein IQ tested him because that's when the duty would be triggered to go investigate adaptive behavior when he came back with that 70 IQ score, and contrasting with what Dr. McMahon had said about IQ. So that's what I would ask for equitable tolling. I see that my time is up. Wait a minute. June 29th, which year? 2004. No, wait. Yes, 2004. But what about all the time in the middle? Why was that test not done until then? Because Mr. Ramirez is not cooperating with us. For that entire time? I thought it was not a cooperative. I mean, that's why it would be really helpful to have a time frame. I thought he was not cooperating for a part of that time. He started cooperating because the test was done. What's that? He obviously, at some point, cooperated because the testing was done. Correct. I can't pinpoint the precise date, you know, before July 28th, that he agreed to do the testing. Is the problem that this should all be the subject of a hearing? Because I had the impression, but it may be not borne out by the existing record, that there was about a year between the time that he did start talking to the lawyers again and agreeing to see the experts and when this last testing was done. Is that wrong? So there's about a year where he kept refusing legal visits, would take some legal visits, would refuse others. One year, but we have two years to attend for. Right. There is a problem getting him to agree to another mental health evaluation. I understand, but we do the dates if you're going to apply tolling, and I don't see any dates in the record. And that was your burden to put in front of the district court. You're saying he wasn't cooperating from X date to X date, and we have something firm. But it's awfully difficult to apply equitable tolling to a situation where we have no period in the record. And it's awfully difficult to put it in the record when many of the facts involve attorney-client privileged information. So how are you going to be any better off on remand? Well, I think we don't need to get there because the claims relate back, or we were diligent under the statute. That's just throwing under the bus the equitable tolling argument. If you want to do that, you can do it. No, I don't want to. I think a hearing would be problematic in terms of if it would delve into what was going on between Ramirez and his counsel at the time. So you're leaving us with an argument about equitable tolling based on refusal to cooperate and absence of any indication in the record of that in terms of a time period, and also indicating that if we remand for that, you would be prohibited from putting that in the record because of the attorney-client privilege. True? To a certain extent. I'm not sure I know what the parameters would be of what that hearing would look like. I think it's, you know, the fact of the matter is Atkins says, intellectual disability prevents rational communication with counsel. That's what was happening here. I don't think we need to delve any further than that. I don't think you can do that. If you're talking about a timeliness claim, I think you have to have a time period involved that prevented the presentation of the claim. But let me move to one other quick question. I know you're over your time, and I think Judge Clifton has one. Opposing counsel indicated that everybody wanted Judge Tilburg to decide the question on the merits. Is that true? And didn't want a further evidentiary hearing. We have always asked for further evidentiary development. However, standing here today and hearing him say that he would be happy to stand on the record as fully developed, well, I would be happy to stand on the record as fully developed if you granted me relief on the merits. I do not want to waive factual development if the court is going to deny me relief. I'm not asking to do anything today. I'm just trying to figure out what was happening for the district court. And from what I understood from your first argument is that you didn't have anything else that you wanted to present, and you thought the state might want to contest ineffective assistance of counsel by the introduction of other evidence concerning the activities of the lawyer. So what is it? Well, you know, the Atkins hearing did not focus on brain damage at all. There are no findings made about brain damage. So before we would be denied any relief, we would, of course, have the right to put on evidence of brain damage. But you have a report in the record about brain damage. That's correct. And if the state is willing to stand on the record without the need for cross-examination, that's fine for them. In terms of our rights to factual development before we are denied relief, I would not concede that. Well, actually, I'm not asking about what you would concede or what you want today. I'm just wondering, it appears at the hearing that it went forward on the idea that both sides wanted a decision on the merits based on the record before the court. We had always asked for factual development.  Well, and I'm on the same subject. And I'm speaking now of the 2016 order, the post-Ninth Circuit remand order. And it's in that order that says at ER 8, the parties agree, though for different reasons, the court should reach the merits of this claim. The court does not articulate what it perceived to be the different reasons of the parties. And the subsequent discussion seems to treat merits, not the COA standard of some merit. And you properly identified a concern for that in your opening presentation about evidentiary hearing. Keep in mind we're talking about 2016 now, not the Atkins issue, which was 2007 or 2008. And my question is, was there prior to that time a request by Petitioner for an evidentiary hearing or evidentiary development? Yes. And is that in the record someplace? Yes. That answers the question. Thank you, Your Honor. Okay. Our questions have taken you over time. Thank you both for your arguments today. You can see we're all laboring under various degrees of respiratory illness. So I appreciate your patience. If our questions weren't clear because of that, then we'll have logic. It will be. Thank you. We'll be in recess.
judges: Thomas, Berzon, Clifton